United States District Court
Southern District of Texas
**ENTERED**
December 18, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., § § Plaintiff, § § VS. § § LOS TAQUITOS BAR AND GRILL LLC § d/b/a Los Taquitos and d/b/a Los Taquitos § Bar and Grill; MARIO GARZA, § individually, and d/b/a Los Taquitos and § d/b/a Los Taquitos Bar and Grill; and § OLGA L. GARZA, individually, and d/b/a § Los Taquitos and d/b/a Los Taquitos Bar § and Grill, § § Defendants. § | CIVIL ACTION NO. 7:19-cv-00160 |

## **OPINION AND ORDER**

The Court now considers the cross-motions for summary judgment: "Plaintiff's Motion for Summary Judgment and Brief in Support,"[1] Defendants' response and motion to strike evidence,[2] and Plaintiff's reply,[3] and "Defendants' Motion for Summary Judgment,"[4] and Plaintiff's response.[5] The Court also considers "Defendants' Motion for Leave to Extend Deadline to File Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment"[6] and Plaintiff's non-opposition.[7] After considering the motions, record, and relevant authorities, the Court **GRANTS** Defendants' motion for leave to file a late reply. The Court finds a genuine dispute of material fact and **DENIES** both motions for summary judgment.

---

[1] Dkt. No. 26.
[2] Dkt. No. 30.
[3] Dkt. No. 32.
[4] Dkt. No. 29.
[5] Dkt. No. 31.
[6] Dkt. No. 33.
[7] Dkt. No. 34.

1 / 15

## I. BACKGROUND AND PROCEDURAL HISTORY

This is an antipiracy case brought under the Federal Communications Act of 1934.[8] Plaintiff J&J Sports Productions, Inc. is a California broadcast corporation[9] that alleges it had the exclusive right to sublicense a certain closed-circuit telecast, the "May 7, 2016 Saul Alvarez v. Amir Khan WBC World Middleweight Championship Fight Program, including all of the undercard or preliminary bouts (collectively the 'Event ')."[10] Plaintiff alleges that, on May 7, 2016, "Defendants willfully intercepted or received the interstate communication of the Event" or alternatively assisted in receiving the communication.[11] Plaintiff alleges that the communication or transmission of the Event "originated via satellite and was electronically coded or 'scrambled'" to prevent unauthorized viewing without proper electronic decoding equipment.[12] Plaintiff alleges that Defendants misappropriated Plaintiff's transmission and exhibited the Event without authorization on May 7, 2016, at their restaurant named "Los Taquitos and Los Taquitos Bar and Grill" in McAllen, Texas to Defendants' patrons, therby intending to "secure a commercial advantage and private financial gain."[13] Plaintiff alleges Defendants violated "47 U.S.C. Section 605, or Section 553."[14]

Plaintiff timely filed its original complaint on May 6, 2019.[15] After numerous continuances to account for the difficulty of conducting discovery during the COVID-19 pandemic,[16] discovery has closed and both parties believe they are entitled to summary judgment

---

[8] 47 U.S.C. §§ 151–646.
[9] Dkt. No. 1 at 1, ¶ 1.
[10] *Id.* at 3, ¶ 7.
[11] *Id.* at 4, ¶ 13.
[12] *Id.* ¶¶ 10, 12.
[13] *Id.* at 4–5, ¶¶ 11, 13–17.
[14] *Id.* at 5, ¶ 18.
[15] Dkt. No. 1; *see Prostar v. Massachi*, 239 F.3d 669, 671 (5th Cir. 2001) (per curiam) (holding that a 3-year statute of limitations applies to claims under the Communications Act).
[16] *See* Dkt. Nos. 19, 21, 23, 25, 28.

and have timely filed motions.[17] The Court first turns to Defendants' motion to file their reply brief one day late to ascertain the briefs being considered.

## II. DEFENDANTS' MOTION FOR LEAVE TO EXTEND DEADLINE TO FILE REPLY

"Defendants seek leave to extend the deadline to file their reply brief in this cause by one day, from December 2, 2020 to December 3, 2020."[18] Defendants filed their motion for summary judgment on November 4, 2020.[19] Plaintiff timely responded pursuant to Local Rule 7.4.A on November 25, 2020.[20] Under Local Rule 7.4.E, Defendants' reply brief was due no later than December 2nd. Instead, on December 3rd, Defendants filed the instant motion seeking the Court's leave to file a late reply. Defendants' counsel explains in an affidavit that the power went out at his law office which caused counsel to lose work on the reply brief and have to restart the draft, which he was unable to complete before December 3rd.[21] In an amended certificate of consultation filed on December 4th, Plaintiff indicated it is unopposed to Defendants' requested extension.[22]

The Court evaluates extensions requested after the expiration of the deadline for excusable neglect.[23] "With regard to determining whether a party's neglect of a deadline is excusable, . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[24] Relevant factors include the danger of prejudice, "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the

---

[17] Dkt. Nos. 26–27, 29–30.
[18] Dkt. No. 33 at 2, ¶ 3.
[19] Dkt. No. 29.
[20] Dkt. No. 31.
[21] Dkt. No. 33-1 at 1, ¶ 2.
[22] Dkt. No. 34.
[23] FED. R. CIV. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect.").
[24] *Pioneer Inv. Servs. v. Brunswick Assocs. LP*, 507 U.S. 380, 395 (1993).

movant acted in good faith."[25] However, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."[26]

Courts around the country have recognized that power or internet outages are outside of counsels' control and generally warrant an extension of time[27] and this Court agrees. Furthermore, Defendants' requested relief is unopposed, which the Court interprets as Plaintiff's non-opposition to Defendants' argument that their delay was justified, not prejudicial, and in good faith. The Court therefore **GRANTS** Defendants' motion for leave to extend the deadline.[28] The Court will treat Defendants' attached "Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment" and its exhibits as though they were timely filed.[29]

The Court now turns to the cross-motions for summary judgment.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court shall award summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[31]

---

[25] *Id.*
[26] *Id.* at 392; *see Fine v. Evergreen Aviation Ground Logistics Enter., Inc.*, No. 2:07-CV-165, 2009 WL 793753, at *2 (E.D. Tex. Mar. 20, 2009) (citing *Pioneer Inv Servs.*, 507 U.S. at 392) ("Although the concept of excusable neglect is 'somewhat elastic,' it generally excludes gross carelessness, ignorance of the rules, or ignorance of the law.")
[27] *E.g.*, *Estate of Wash. v. Carter's Retail, Inc.*, No. 3:10-CV-1136-J-32TEM, 2011 WL 2731291, at *3 (M.D. Fla. July 13, 2011) (granting an extension of time because a party's counsel maintained "that, in addition to being busy, an internet outage beyond her control precipitated her failure to meet the filing deadline"); *Esparza v. Thill*, No. 06-1309-MLB, 2007 WL 4591236, at *3–4 (D. Kan. Dec. 31, 2007) (granting an extension of time because of ice and snow-caused power outages).
[28] Dkt. No. 33.
[29] Dkt. No. 33-2.
[30] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).
[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

To earn summary judgment, the movant must demonstrate that there are no disputes over genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[32] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."[33] The movant "bears the initial burden of . . . demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[34] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[35] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[36] and must "articulate precisely how this evidence supports his claim,"[37] to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[38] If the movant fails to meet its initial burden, the motions for summary judgment "must be denied, regardless of the nonmovant's response."[39] Accordingly,

---

[32] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).
[33] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").
[34] *Lynch Props. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).
[35] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").
[36] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").
[37] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[38] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).
[39] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

the Court may not enter summary judgment by default,[40] but may accept a movant's facts as undisputed if they are unopposed.[41]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[42] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[43] and a "mere scintilla of evidence" also will not do.[44] Even if the nonmovant produces more than a scintilla of evidence in its favor, such evidence may be "so overwhelmed by contrary proof" that summary judgment is still proper in favor of the movant.[45] The Court does not need to "credit evidence that is 'blatantly contradicted by the record,' especially by video or photographic evidence."[46] "[T]he nonmoving party must adduce evidence sufficient to support a jury verdict."[47] Neither self-serving allegations nor conclusory affidavits can defeat a motion for summary judgment supported by probative evidence.[48] The Court will countenance only *reasonable* inferences in the

---

[40] *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).
[41] *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition").
[42] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991) ("[T]he party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence.").
[43] *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[44] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).
[45] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (quoting *Neely v. Delta Brick and Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987)), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).
[46] *Malbrough v. Stelly*, 814 F. App'x 798, 804 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).
[47] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).
[48] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *see Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

nonmovant's favor and will not indulge "senseless" theories or leaps in logic.[49] The nonmovant is "*required* to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[50] "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."[51] Courts "will not assume 'in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[52] The Court is under no duty to sift through the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[53]

"A fact is 'material' if its resolution could affect the outcome of the action,"[54] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[55] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[56] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a

---

[49] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).
[50] *Ragas*, 136 F.3d at 458 (emphasis added).
[51] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case.").
[52] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).
[53] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).
[54] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).
[55] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").
[56] *Anderson*, 477 U.S. at 248.

pure question of law."[57] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[58] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[59]

### b. Analysis

Defendants argue that "there is no competent evidence showing where or how the signal [of the Event] originated," so Plaintiff cannot show a violation of either 47 U.S.C. §§ 553 or 605.[60] Plaintiff argues the evidence shows the signal originated via satellite.[61]

Plaintiff brings its claim pursuant to 47 U.S.C. § 553 or alternatively § 605.[62] Section 553 provides, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[63] Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."[64] Both sections are intended to provide for remedies and penalties to "protect the revenue of television cable companies from unauthorized reception of their transmissions,"[65] but a plaintiff cannot recover under both sections.[66] Section 553 applies

---

[57] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).
[58] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[59] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).
[60] Dkt. No. 29 at 7, ¶¶ 13, 15.
[61] Dkt. No. 31 at 16, ¶ 27; Dkt. No. 32 at 4, ¶¶ 5–6.
[62] Dkt. No. 1 at 3, ¶ 5.
[63] 47 U.S.C. § 553(a)(1).
[64] *Id.* § 605(a).
[65] *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quoting *Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 961 (N.D. Ill. 2000)); *see also* H.R. REP. NO. 98-934, at 83, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720 ("The Committee is extremely concerned with a problem which is increasingly plaguing

to cable communications whereas section 605 applies to radio communications.[67] "Radio communication" in section 605 encompasses "satellite cable programming."[68] "To prevail under either statute, Plaintiff need only show (1) that the Event was shown in Defendants' Establishment, (2) that the Event was shown without authorization by Plaintiff, and (3) that Plaintiff was the exclusive licensee."[69] But "[b]efore determining whether to impose liability under section 553 or 605, the district court [must] determine whether the [defendant] broadcasted the [program] via satellite, cable, or internet."[70] To prevail under section 553 specifically, Plaintiff must show transmission of the signal by "cable services."[71] In contrast, to recover for a violation under section 605, Plaintiff must prove that Defendants, without authorization, intercepted a radio communication and published it to any person.[72] These are strict liability

---

the cable industry—the theft of cable service. . . . Theft of service is depriving the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.").

[66] *See Joe Hand Promotions, Inc. v. Breaktime Bar, LLC*, No. CIV.A. 12-2618, 2014 WL 1870633, at *4 (W.D. La. May 8, 2014) (citing *Charter Commcn's Entm't I, DST v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006) & *United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996)) ("The plaintiff has not shown whether the PPV [pay-per-view event] was broadcast via satellite or cable or how [defendant] intercepted the PPV, which determines whether [defendant's] conduct violates 47 U.S.C. § 605 or 47 U.S.C. § 553."), *cited in J&J Sports Prods., Inc. v. Evolution Entm't Grp.*, No. CIV.A. 13-5178, 2014 WL 3587370, at *2 (E.D. La. July 21, 2014) ("In the absence of any evidence regarding how the boxing match was transmitted, Plaintiff has not established its right to judgment as a matter of law with respect to either statute."); *J&J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 417CV11155TGBDRG, 2019 WL 1584538, at *4, 2019 U.S. Dist. LEXIS 63242, at *8 (E.D. Mich. Apr. 12, 2019); *Joe Hand Promos., Inc. v. Carter*, No. 18-CV-01105-RM-MEH, 2018 WL 3640713, at *3, 2018 U.S. Dist. LEXIS 129288, at *8 (D. Colo. Aug. 1, 2018); *J&J Sports Prods., Inc. v. Palumbo*, No. 4:12CV2091, 2012 WL 6861507, at *3 (N.D. Ohio Dec. 12, 2012) (collecting cases) ("[C]ourts have held that when a defendant is liable under both Section 605 and Section 553, a plaintiff may recover under only one section."); *Kingvision Pay-Per-View, Ltd. v. Arias*, No. C 99-3017 SI, 2000 WL 20973, at *2 n.7 (N.D. Cal. Jan. 7, 2000) (citing *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir.1993)).
[67] *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352–53 (5th Cir. 2014).
[68] 47 U.S.C. § 605(d)(6).
[69] *G&G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 6:12-cv-3052, 2014 U.S. Dist. LEXIS 5416, at *9 (W.D. La. Jan. 14, 2014) (quotation omitted) (collecting cases); *cf. G&G Closed-Circuit Events, LLC v. 10 De Mayo Mexican Grill & Bar LLC*, No. 1:14-cv-31, 2014 U.S. Dist. LEXIS 190633, at *14 (E.D. Tex. Dec. 17, 2014) (citing 47 U.S.C. § 605(a)) ("Plaintiff must establish that Defendants (1) received, assisted in receiving, transmitted, or assisted in transmitting an interstate communication by radio and (2) broadcast, displayed, or divulged that communication to (3) at least one other person (4) without authorization.").
[70] *J&J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020).
[71] *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 348 (5th Cir. 2014).
[72] *See id.* at 352–53; *10 De Mayo Mexican Grill & Bar LLC*, 2014 U.S. Dist. LEXIS 190633, at *14.

statutes.[73] There is no good faith defense and Defendant's intent is irrelevant except with respect to enhanced damages.[74]

The Court first establishes how the signal was broadcast and which statute applies to this case. Plaintiff argues that section 605 applies because the transmission of the Event originated via satellite.[75] Plaintiff points to the testimony of its corporate representative, Thomas Riley.[76] Defendants object to this evidence and move to strike it as "conclusory and . . . not based on personal knowledge."[77] "This contention is unavailing. Personal knowledge may be demonstrated by showing that the facts stated reasonably fall within the sphere of responsibility of the affiant as a corporate employee. Moreover, personal knowledge does not necessarily mean contemporaneous knowledge."[78] An employee or representative who manages production operations offers a "sufficient basis upon which to infer that [the employee] has personal knowledge" of facts related to the employee's corporate function.[79] "A custodian of records is competent to testify from the business records as a corporate representative."[80]

Thomas Riley is Plaintiff's lawyer and agent "with regard to certain infringement matters (including the discovery, investigation and prosecution of claims arising from the theft or piracy of closed-circuit television programming, including the [Event])."[81] Mr. Riley averred in an affidavit as follows:

---

[73] *See J&J Sports Prods. v. Little Napoli, Inc.*, No. H-13-1237, 2014 WL 3667903, at *2, 2014 U.S. Dist. LEXIS 99032, at *5 (S.D. Tex. July 22, 2014) (Miller, J.).
[74] *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08 CV 1259, 2009 WL 1767579, at *4, 2009 U.S. Dist. LEXIS 52517, at *12 (N.D. Ohio June 22, 2009) (collecting cases).
[75] Dkt. No. 32 at 4–5, ¶¶ 5–7 (citing Dkt. No. 26-1 at 7, ¶ 7; Dkt. No. 26-1 at 68, 27:2–13).
[76] *Id.*
[77] Dkt. No. 30 at 16, ¶ 31.
[78] *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (internal quotation marks and citations omitted).
[79] *Id.*
[80] *In re World Health Jets LLC*, 610 B.R. 118, 136 (Bankr. S.D. Miss. 2019) (citing Fed. R. Evid. 803(6) & *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000)).
[81] Dkt. No. 26-1 at 6, ¶ 3.

> The transmission of the Event originated via satellite. In order to safeguard against the unauthorized interception or receipt of the Event, the interstate satellite transmission of the Event was electronically coded or scrambled and was not available to or intended for the use of the general public. If a commercial establishment was authorized by Plaintiff to receive the Event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal or the establishment's cable or satellite provider would be notified to unscramble the reception of the Event for the establishment, depending upon the establishment's equipment and provider.[82]

Mr. Riley further elaborated in his testimony:

> Well, the signal is -- fights -- the fights are broadcast, there is film crews at the arenas, at th [sic] venues that film live sporting events, and those -- they're the film crew. The signal is uplifted to a satellite. The technical teams handle all of that. Eventually, it's an encrypted signal here in the U.S. That is distributed to the broadcaster, whoever it is, will send out, and then the folks that have sublicensed the event, either commercially or residentially, get the unencrypted signal because they've licensed the event, as required.[83]

However, the person "who operated and controlled Los Taquitos Bar and Grill back when it was open in 2016,"[84] Efrain Banuelos, averred in his affidavit that, "[a]t Los Taquitos, I had cable television service, although it was only for a short while."[85] The foregoing is the only evidence regarding how Defendants' restaurant received the signal and broadcast the Event on May 7, 2016.

Defendants argue that this evidence is insufficient: "Plaintiff has not provided any competent summary judgment evidence showing the Program was displayed via satellite transmission."[86] Plaintiff's reply admits that "both Plaintiff's Auditor and Plaintiff's corporate representative testified that they were unaware of how the Event ultimately came to be shown at Defendants' Establishment," but argues that their evidence is nonetheless sufficient to establish

---

[82] *Id.* at 7, ¶ 6.
[83] Dkt. No. 26-1 at 68, 27:2–13.
[84] Dkt. No. 33-2 at 13, ¶ 2.
[85] *Id.* at 17, ¶ 3.
[86] Dkt. No. 33-2 at 6, § C.

that § 605 is properly invoked primarily on the authority of an unpublished Fifth Circuit case.[87] Defendants disagree.[88]

The Fifth Circuit case at issue is *J&J Sports Productions, Inc. v. Enola Investments, L.L.C.*[89] In that case, the district court held a bench trial and granted judgment in favor of J&J Sports Productions, Inc. on a similar claim of broadcast piracy.[90] On appeal, the Fifth Circuit affirmed in all respects.[91] Plaintiff cites this case to argue that the evidence Plaintiff presented is sufficient to grant summary judgment in Plaintiff's favor because the Fifth Circuit held that 47 U.S.C. § 605 applies when the only undisputed evidence is that the source of the program's transmission originated via satellite.[92] The Court disagrees with this argument. The Fifth Circuit in *Enola Investments* actually found that the district court made three crucial findings: "(1) the Fight's transmission 'originated via satellite'; (2) the defendants had 'a commercial cable account through which [the Lounge] received television and internet services'; and (3) J & J's investigator 'testified that the [Fight] was being shown in high definition.'"[93] The Fifth Circuit affirmed the district court's conclusion that Plaintiff's transmission was shown at the defendant's lounge via satellite because that conclusion was plausible in light of the record as a whole, and the district judge properly exercised his factfinding role.[94] Plaintiff's argument elides the district court's findings 2 and 3 to argue that only finding 1, concerning the origin of the transmission, would have been sufficient to make the same finding that the signal was broadcast via satellite. In actuality, the Fifth Circuit found that the "only *undisputed* evidence is that the Fight was originally transmitted via satellite," but the district court's other findings were necessary to

---

[87] Dkt. No. 32 at 5–6, ¶¶ 8–9.
[88] Dkt. No. 33-2 at 7–8.
[89] 795 F. App'x 313 (5th Cir. 2020).
[90] *J&J Sports Prods., Inc. v. Enola Invs., L.L.C.*, No. H-17-2893 (S.D. Tex. May 30, 2019) (Hittner, J.), Dkt. No. 43.
[91] *J&J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020).
[92] Dkt. No. 32 at 5, ¶ 8.
[93] *Enola Invs.*, 795 F. App'x at 315 (alterations in original).
[94] *Id.*

ground the district court's ultimate conclusion that the transmission was broadcast at the defendant's establishment via satellite.[95] In this case, there is undisputed evidence that the transmission originated via satellite[96] and undisputed evidence that Defendants' restaurant had cable television service for some period,[97] but, in contrast to *Enola Investments*, there is no factfinder's conclusion about which means were used to broadcast the Event at Defendants' establishment.

Before the Court proceeds, the Court addresses one other issue Defendants recognized with respect to *Enola Investments*.[98] In *Enola Investments*, the Court made the following citation:

> *Cf. J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 802–03 (10th Cir. 2016) (noting that lack of an active satellite service account does not preclude liability under section 605, as the statute "does not require identification of the precise means used to accomplish the piracy of a satellite signal").[99]

*Enola Investments* may therefore potentially be read as an endorsement of the view that demonstrating a violation of 47 U.S.C. § 605 does not require proof of how the transmission was broadcast or pirated. The Court agrees with Defendants, however, that this is an improper view of § 605. First, it must be noted that *Enola Investments* is unpublished and therefore "not precedent."[100] Second, the signal preceding the citation is not a full endorsement of the opinion cited; the "*cf.*" signal means that "[c]ited authority supports a proposition different from the main proposition but sufficiently analogous to lend support."[101] Third, the citation to the Tenth Circuit's opinion in context was merely to support the view that the district court could choose among "satellite, internet, or cable" in its role as factfinder to ascertain which statute applied because all were plausible options; the Fifth Circuit did not *expressly* hold that it was adopting

---

[95] *Id.* (emphasis added).
[96] *See supra* notes 82–83.
[97] *See supra* notes 84–85.
[98] *See* Dkt. No. 33-2 at 7.
[99] *J&J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020).
[100] 5th Cir. R. 47.5.3.
[101] THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 1.2(a) (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020).

the view that proof of how the signal was broadcast was unnecessary.[102] Last and most importantly, the Fifth Circuit's published and precedential opinion in *J&J Sports Productions, Inc. v. Mandell Family Ventures, L.L.C.*, expressly rejects J&J's and other circuit courts' view that how the signal at issue was broadcast by the defendant is an unimportant issue.[103] Quite the contrary, *Enola Investments* itself cites *Mandell Family Ventures* for the proposition that the district court must first determine whether the defendant lounge broadcast the plaintiff's fight event via satellite, cable, or internet.[104] The Fifth Circuit rejected the "point of origination interpretation" advanced by the Second Circuit[105] because doing so would "unacceptably blu[r] the line between radio and wire communications" when § 605 "does not apply to the Defendants' receipt of communications by wire from [a] cable system."[106] The Court agrees with Defendants' view that the Tenth Circuit case is unpersuasive because it conflicts with *Mandell Family Ventures* and, by accepting the view that there need not be proof of the means of piracy, "any plaintiff could simply state through its corporate representative that a program's signal originated via satellite and that would allow plaintiff the possibility of recovering the higher statutory damages allowed by section 605" and render § 553 largely superfluous, which is the view *Mandell Family Ventures* rejected.[107] In sum, in the Fifth Circuit, proof of how a defendant broadcast or pirated the licensor's signal is a crucial part of ascertaining whether the plaintiff

---

[102] *Enola Invs.*, 795 F. App'x at 315.
[103] 751 F.3d 346, 352–53 (5th Cir. 2014).
[104] *Enola Invs.*, 795 F. App'x at 315.
[105] *Kingvision Pay-Per-View v. Marinelarena*, No. EP-01-CA-0155-EP, 2002 U.S. Dist. LEXIS 25894, at *6 (W.D. Tex. Mar. 28, 2002) (discussing the different interpretations of 47 U.S.C. § 605).
[106] *Mandell Family Ventures*, 751 F.3d at 352–53 (quotation omitted).
[107] Dkt. No. 33-2 at 7; *Mandell Family Ventures*, 751 F.3d at 353 ("Applying § 605 as J&J requests would remove this demarcation and require us to assume Congress's enactment of § 553 was largely superfluous—a course that we decline to take.").

may recover under 47 U.S.C. §§ 553 or 605 because a plaintiff may not recover under both statutes.[108]

The parties have established "conflicting evidence about how [Defendants' restaurant] broadcast the Fight" and the Court holds that a factfinder may reasonably choose between competing views of the existing evidence.[109] Echoing *Enola Investments*, a factfinder may plausibly determine that the Event *originated* via satellite but that Defendants had a commercial cable account that could have broadcast the Event, so the factfinder could determine that Defendants broadcast the signal via cable or satellite. Indeed, Plaintiff's corporate representative expressly acknowledged that how Defendants' restaurant ultimately received and broadcast the Event *depends* "upon the establishment's equipment and provider."[110] The Court holds that neither party has demonstrated that "there is no genuine issue of material fact and [that] the moving party is entitled to judgment as a matter of law,"[111] because neither party has established whether 47 U.S.C. §§ 553 or 605 is at issue in this case.

## IV. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **DENIES** both parties' motions for summary judgment.[112]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 18th day of December 2020.

_____
Micaela Alvarez
United States District Judge

---

[108] *See supra* note 66; *accord Mandell Family Ventures*, 751 F.3d at 352–53.
[109] *See J&J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020) (quoting *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996)).
[110] Dkt. No. 26-1 at 7, ¶ 6.
[111] *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).
[112] Dkt. Nos. 26, 29.